## Appeal of DAVID BAIRD & SON, INC.

Docket No. 3615.    Submitted June 30, 1925.    Decided October 19, 1925.

1. A contribution to a State improvement by a corporation is not deductible from gross income in its income-tax return in the absence of a showing that a benefit flows directly to the corporation from the making of such contribution.

2. The taxpayer keeping its books of account upon an accrual basis and investing a large part of its profits for a particular year in supplies to be used during the following year is properly required to treat the increase in its supply account as a deferred expense, deductible from the gross income of the year in which the supplies are actually used.

3. The taxpayer sustained a loss from smoke and water upon merchandise fully insured; it estimated its loss from such damage at a given amount, only a portion of which was allowed by the insurance companies; the taxpayer claimed a deduction of the balance of its alleged loss. *Held,* that the claimed loss was not proven.

*Camden R. McAtee, Esq.*, for the taxpayer.
*Arthur H. Murray, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This appeal is from the determination of deficiencies in income and profits tax for the years 1919 and 1920 in the respective amounts of $75.09 and $2,192.43.

### FINDINGS OF FACT.

1. The taxpayer is a Kentucky corporation with its principal office at Louisville. During the years 1919 and 1920 it became engaged in the wholesale millinery business, manufacturing to some extent and selling through its store and through salesmen on the road.

2. In its income-tax return for the years 1919 and 1920 the taxpayer deducted from gross income $137.50 and $100, respectively, which represented contributions made to the Louisville and Cincinnati highway fund and to the Ohio River highway fund. The reasons for making the contributions were that roads between Cincinnati and Louisville in 1919 and 1920 were in wretched condition and no public funds for repair or reconstruction were available. The taxpayer was not directly located on any of these roads but its salesmen and other employees used them to a considerable extent. For the purpose of repairing and reconstructing the roads, the highway association collected funds from all business interests in the territory and used the same on the roads. The taxpayer, with others, made contributions to this association.

3. The taxpayer kept its books of account upon an accrual basis. Prior to 1920 its returns were made upon a calendar year basis. It changed its basis of reporting from a calendar year to a fiscal year ended November 30, and filed its first return upon a fiscal year basis for the fiscal year ended November 30, 1920. It ships much of its product in December of each year. On December 31, 1918, its supply inventory was $1,478.50; on December 31, 1919, $1,558.40; and on November 30, 1920, $5,370.05. The supply inventory was denominated "Supply memorandum accounts." An inventory of supplies was taken at the close of each six-month period until 1920, when its inventory was taken on November 30. Its inventory of merchandise was taken at the same time but its inventory of supplies was not carried in its process accounts or financial statements. This system of taking an inventory of its supplies and treating it as a memorandum account has been followed for many years. Prior to the year 1920 the difference in these inventories at the beginning and close of the year was very

small. In the audit of the taxpayer's income-tax returns for the calendar year 1919 and its fiscal period ended November 30, 1920, the Commissioner has increased the net income by the amounts of $79.90 and $3,811.65, respectively, representing the increase in " Supply memorandum accounts " for the fiscal periods in question.

4. On October 1, 1920, property contiguous to the taxpayer's place of business was destroyed by fire. The taxpayer's merchandise was damaged by smoke and water. It was insured for such damage to the full amount of its value. In due course it ascertained a claim for several thousand dollars to cover the smoke and water damage against several insurance companies in which it was insured. It claimed a loss of $6,640.37. It, however, was allowed by these companies damages of only $3,640.37. It credited this amount to income; and at the same time, after taking its inventory based upon the market price of the goods, reduced the inventory thus ascertained by the amount of $3,640.37. In its income-tax return for the fiscal period January 1 to November 30, 1920, it claimed as a deduction from gross income $3,000, which was the difference between the claimed damage to its merchandise and the amount allowed by the insurance companies. The only reduction in the inventory at November 30, 1920, was $3,640.37.

5. During the taxpayer's fiscal year ended November 30, 1921, the taxpayer charged off $10,184.34 for worthless debts.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

SMITH: At the hearing of this appeal the taxpayer waived certain allegations of error shown in its petition. It contended that the determination of the tax contained in the deficiency letter, which had been sent it under date of February 24, 1923, was erroneous in the following particulars:

1. Disallowance of deductions for business expense for 1919 of $137.50, and for 1920, $100, paid, respectively, to the Louisville and Cincinnati highway fund and to the Ohio River highway fund.

2. Setting up alleged " Supply memorandum accounts," to wit, on December 31, 1918, of $1,478.50; on December 31, 1919, of $1,558.40; and on November 30, 1920, of $5,370.05, as assets on the respective balance sheets of said dates and crediting the difference of $79.90 and $3,811.65 to expense for the years 1919 and 1920 and disallowance thereby of said accounts as expense.

3. Disallowance for 1920 of $3,000 loss caused by fire and water and not compensated by insurance.

4. Disallowance of bad debts for 1920 in the amount of $10,184.34.

Relative to the first allegation of error the Board is of the opinion that the action of the Commissioner in disallowing the deduction of the contributions from the taxpayer's gross income for the years 1919 and 1920 is entirely proper. The evidence before the Board does not clearly show that any benefit flowed directly to the taxpayer from the making of the contributions. It was not in our opinion an ordinary and necessary expense within the contemplation of the taxing statutes. *Appeal of Poinsett Mills*, 1 B. T. A. 6; *Appeal of Holt-Granite Mills Co.*, 1 B. T. A. 1246; *Appeal of the Thomas Shoe Co.*, 1 B. T. A. 124.

The taxpayer kept its books of account upon an accrual basis. It kept a memorandum account of its supplies on hand, and the Commissioner, for the purpose of accurately showing the taxpayer's net income, has allowed the deduction from gross income of supplies actually consumed during the taxable periods under review instead of the supplies purchased. It appears from the taxpayer's books of account that for the taxable period ended November 30, 1920, it had invested $3,811.65 of its earnings for the fiscal period in supplies to be consumed during the succeeding year. We think that this treatment of the taxpayer's accounts more accurately reflected its true net income than the system actually employed by the taxpayer and that such treatment is entirely consistent with an accrual system of accounting.

In October, 1920, the taxpayer suffered a loss to its stock of merchandise from smoke and water from a fire in an adjoining building. It claimed that its loss from this source was $6,640.37. Its merchandise was fully insured. The insurance companies, however, determined the loss to be only $3,640.37. The taxpayer accepted this amount and reduced its inventory in a like amount. In its income-tax return for the fiscal period ended November 30, 1920, the taxpayer claimed the deduction of a loss of $3,000. The Commissioner has disallowed the deduction of this loss on the ground that any loss which might be sustained by the taxpayer in the liquidation of its inventory on and after November 30, 1920, would be reflected in the taxpayer's accounts, and that there is no clear proof that the loss of $3,000 was actually sustained.

We are of the opinion that the proof does not show that the loss from the smoke and water was in excess of the amount found by the insurance companies.

The taxpayer charged off in the year 1921 bad debts amounting to $10,184.34. It is its contention that the credit man of the corporation knew that these accounts were worthless during the fiscal period ended November 30, 1920, and that it was through his negligence that they were not charged off within the period. The presi-

dent of the corporation and the other officers were not aware of the alleged worthlessness of the accounts in 1920. Section 234 (a) (5) of the Revenue Act of 1918 allows the deduction from gross income of "Debts ascertained to be worthless and charged off within the taxable year." The evidence adduced before the Board in support of the taxpayer's contention that the amount of these accounts should be allowed as a bad-debt deduction for the fiscal year ended November 30, 1920, is not sufficient to convince us that there was such an ascertainment of worthlessness of the accounts within the year in question as would warrant their deduction from gross income.